## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

T.T. INTERNATIONAL CO., LTD.,

        Plaintiff,

v.

                                  CASE NO.:

BMP INTERNATIONAL INC.,
BMP USA, INC., iGAS USA, INC.,
and iGAS HOLDINGS, INC.

        Defendants.

## COMPLAINT

Plaintiff T.T. International Co., Ltd. ("T.T." or "Plaintiff") sues Defendants, BMP International, Inc., BMP USA, Inc., iGas USA, Inc., and iGas Holdings, Inc. (collectively, "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.    This is an action under Sections 726.105 and 726.106, Florida Statutes, for relief against transfers in fraud of T.T., a creditor of BMP International and BMP USA.

2.    T.T. is the Plaintiff in an action against BMP International and BMP USA which is pending in the Middle District of Florida, Tampa Division, and styled *T.T. International Co., Ltd. v. BMP International, Inc.*, Case No. 8:19-CV-2044-CEH-AEP (the "Lawsuit"). The Lawsuit is set for trial on August 29, 2022.

3.      In the Lawsuit, T.T. seeks payment for (a) over $14 million of refrigerants, disposable cylinders, and related products shipped to Defendant BMP International; and (b) over $58 million of refrigerants, disposable cylinders, and related products shipped to Defendant BMP USA.  BMP International and BMP USA (the "BMP Defendants") failed to pay T.T. for those goods such that there is over $74 million due T.T. from the BMP Defendants.

4.      In June of 2021, while the Lawsuit was pending, Articles of Incorporation for Defendant iGas Holdings, Inc., were filed with the Florida Secretary of State.   A complete, accurate, and authentic copy of Electronic Articles of Incorporation for  iGas Holdings, Inc. are attached as Exhibit A.

5.      As set forth in its Articles of Incorporation, iGas Holdings lists Xianbing Meng as its President.

6.      Xianbing Meng, who is also known as Ben Meng, is the president of Defendants, BMP International and BMP USA.

7.      The name and address of the incorporator of iGas Holdings is:

> Eric W. Neilsen
> 100 2nd Avenue North, Suite 240
> St. Petersburg, Florida

Mr. Nielson affixed his electronic signature on iGas Holdings' Articles of Incorporation, which he made effective June 29, 2021. And he listed his law firm, Nielsen Law Group, P.A., as iGas Holdings' registered agent.

8.     Mr. Nielsen and his law firm, Nielsen Law Group, P.A., are counsel of record for Defendants, BMP International and BMP USA in the Lawsuit.

9.     While the Lawsuit was pending, Meng also caused BMP USA to transfer over $750,000 worth of equipment to another company he controls, iGas USA, Inc.  iGas USA was also a defendant in the Lawsuit until it settled with T.T. and was therefore subsequently dismissed.

10.     iGas Holdings and iGas USA engage in substantially the same business from the same location with substantially the same employees and equipment as BMP International and BMP USA.

11.     BMP International and BMP USA subsequently represented to the United States Environmental Protection Agency that they were subsidiaries of iGas Holdings and thus effectively transferred extremely valuable assets to the newly formed iGas Holdings: i.e., annual allowances required to import HFC-containing refrigerants into the United States.

12.     Those annual HFC allowances were earned not by iGas Holdings but instead by BMP International and BMP USA based on their past imports of HFC-containing refrigerants, including, importantly, the over $70 million of refrigerant gases that these Defendants ordered from T.T. and for which they refuse to pay.

13.     In March of 2022, the District Court denied in full Defendants' Motion for Summary Judgment in the Lawsuit and ruled that T.T. entitled to judgment in its favor on its unjust enrichment claims with the total amount of damages to be determined at trial.  If, however, the Court determines at trial that there is an express contract or contracts between the parties, T.T. will be entitled to recover under its breach of contract claims rather than its alternative claims (e.g., unjust enrichment) for those goods that the Court finds were subject to a contract.

14.     Thus as set forth in more detail below, BMP International and BMP USA have engaged in a scheme to avoid paying damages to T.T. arising from the Lawsuit by transferring to iGas Holdings extremely valuable HFC allowances that the BMP Defendants earned in significant part by ordering over $70 million of refrigerant gases from T.T.  and then refusing to pay for it.

**THE PARTIES**

15.     Plaintiff T.T. is a company organized under the laws of the People's Republic of China, which at all material times had its principal place of business in Dalian, China.

16.     Defendant BMP International is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

17.     Defendant BMP USA is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

18.     Defendant iGas Holdings is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

19.     Defendant iGas USA is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between the citizens of a State and a citizen of a foreign state.

21.     The Court has personal jurisdiction over BMP International because it is a citizen of Florida.

22.     The Court has personal jurisdiction over BMP USA because it is a citizen of Florida.

23.     The Court has personal jurisdiction over iGas Holdings because it is a citizen of Florida.

24.     The Court has personal jurisdiction over iGas USA because it is a citizen of Florida.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because BMP International, BMP USA, and iGas Holdings reside in this judicial district,

and a substantial part of the events or omissions giving rise to the claims occurred here.

## FACTUAL ALLEGATIONS

26.     T.T. is a trading company that purchases and subsequently sells refrigerants, disposable cylinders, and related products from China.  T.T. often sells to importers in countries such as the United States.  T.T. does not maintain any offices, employees, or agents within the United States.  Nor does T.T. itself import product into the United States.

27.     Defendants are business organizations that, among other things, imported or import refrigerants, disposable cylinders, and related products to the United States.  Defendants market themselves as wholesalers of refrigerant and related products.  Accordingly, they resell the refrigerant and related products that they receive from T.T. and presumably other suppliers.

28.     At all relevant times, Defendants were and are controlled, in whole or in part and directly or indirectly, by Xianbin "Ben" Meng, who resides in the Tampa Bay area.

**A.     BMP International and BMP USA failed to pay for goods ordered and received.**

29.     In or around August 2012, T.T. began shipping refrigerant and related goods to Defendant BMP International.

30.     In or around June 2015, T.T. began shipping refrigerant and related goods to Defendant BMP USA.

31.     From March 2015, T.T. shipped goods to the BMP Defendants on an open account basis.  According to the invoices, Defendants were to remit payment within 60 days.

32.     But the BMP Defendants failed to pay the full amount due and began falling behind.

33.     By the end of 2015, the BMP Defendants collectively owed about $38 million to T.T.

34.     Over the next three years, the BMP Defendants continued to both order more goods and make payments totaling less than the cost of those goods. Consequently, BMP International's and BMP USA's debt to T.T. continued to increase.

35.     For each sales transaction, T.T. sent BMP International or BMP USA a Commercial Invoice.

36.     In the Lawsuit, BMP International and BMP USA stipulated that they (1) received the goods listed on each Commercial Invoice; (2) retained the goods listed on each Commercial Invoice; and (3) never returned any of the goods listed on a Commercial Invoice.

37.    For orders memorialized by a Commercial Invoice, the BMP Defendants also filed a corresponding 7501 Form with U.S. Customs and Border Protection.

38.    On each 7501 Form, BMP International or BMP USA listed the value of the goods as the total price shown on the corresponding Commercial Invoice. BMP International and BMP USA also attested to U.S. Customs and Border Protection that the goods listed on the 7501 Forms and the Commercial Invoices were "obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoices are true."

39.    Throughout the nearly six-year relationship among the BMP Defendants and T.T., Meng was the President and primary representative of both BMP International and BMP USA with respect to placing orders, making payments, and communicating with T.T.

40.    In or around July 2018, Meng communicated to T.T. that he was ending the parties' business relationship.

41.    T.T. subsequently demanded that BMP International and BMP USA pay their outstanding balances in full.  At the end of the relationship, BMP International and BMP USA owed T.T. a total of over $70 million.

42.     In or around November 2018, BMP International and BMP USA stopped making payments to T.T.  At the time, their combined debt still exceeded $70 million.

43.     By the end of 2018, Mr. Meng stopped using BMP International and BMP USA to import and sell refrigerant.  Meng admitted in his deposition in the Lawsuit that this was due in part to legal troubles facing both companies.

44.     After settlement discussions between T.T. and the BMP Defendants were unsuccessful, T.T. filed the Lawsuit in the Middle District of Florida to recover the amounts owed to it by BMP International and BMP USA.

45.     iGas USA was also a Defendant in the Lawsuit until it settled with T.T. and was therefore dismissed in October of 2020.

46.     Now, in the Lawsuit, BMP International and BMP USA claim that the prices listed on the (a) Commercial Invoices; (b) the 7501 Forms; and (c) the BMP Defendants' own internal records were not the actual price of the goods.

**B.     BMP International and BMP USA imported gas between 2011 and 2019 and were therefore eligible to apply for HFC allowances.**

47.     In 2020, the American Innovation and Manufacturing (AIM) Act became law.  Among other things, the AIM Act required a gradual phasedown in the use of hydrofluorocarbons (HFCs) because of their adverse impact as greenhouse gases.

48.     To accomplish the phasedown, the Environmental Protection Agency evaluated the current use levels of HFCs, including from HFCs in refrigerant gases.

49.     For HFCs imported into the United States, EPA created a system in which importers receive annual allowances to import HFC-containing refrigerants. The number of allowances will reduce annually in an amount determined by EPA.

50.     In 40 C.F.R. Section 84.11, EPA specified how it would allocate the initial set of HFC allowances.  Future import rights are based on the "the average of the three highest annual exchange value-weighted consumption amounts chosen at the corporate or common ownership level for eligible entities reporting to the agency for each calendar year 2011 through 2019."

51.     For BMP International and BMP USA, this includes the years in which they ordered, imported, and failed to pay for refrigerant gases from T.T. Thus, the BMP Defendants used goods for which they failed to pay T.T. to increase the amount of allowances to which they would be entitled.

52.     Only entities with HFC allowances can legally import HFC-containing refrigerants into the United States. Consequently, these allowances are very valuable.

53.     Moreover, entities with HFC allowances can sell them provided the EPA approves.  HFC allowances would have significant market value in any such sales.

54.    Indeed, Meng recognized HFC allowances as a key asset of BMP USA even before passage of the AIM Act.  In or around January of 2018, Meng cited future allowances as a key asset of BMP USA to Grant Thornton China during a valuation exercise.  In a January 2018 email, Meng explained:

> Also, we have real value in the allocation to import HFCs. We are the largest importer and sales of HFC.  Based on the quote system, we should have the largest import allowance among all importer, users. Use 2017 as example, that R22 sale in China for $25/jug, and it sold in the US for $750/jug. Only those have import allowance can import R22. The same situation will happen for HFC's.  If that happen, with our 44 million lbs. allocation /2 x20= 440millions XlO average price appreciation= used 4.4 billion Even if we discount 50%, the profit still will be $2.2 billion for next 20 years.

55.    BMP USA had experience in using EPA allowances.  In or around 2018, BMP USA acquired EPA allowances to import hydrochlorofluorocarbons (HCFCs).  EPA had created a similar allowance market to phase down use of HCFCs before it created the current HFC allowance market.  BMP USA took advantage of this market and purchased allowances.

56.    However, in 2021, BMP International and BMP USA transferred their rights to receive very valuable HFC allowances to iGas Holdings *without* receiving equivalent value in exchange.   Meng himself had estimated these allowances could generate profits of "$2.2 billion for [the] next 20 years."

C.   **BMP International and BMP USA fraudulently transferred their rights to HFC allowances to a newly created parent—iGas Holdings.**

57.   During the time that  BMP International and BMP USA imported refrigerant gases from T.T., each was an independent company wholly owned by Ben Meng.

58.   In fact, BMP International and BMP USA had both represented to EPA that they were independent companies.

59.   Yet iGas Holdings submitted documentation to EPA representing that BMP International and BMP USA were wholly owned subsidiaries of iGas Holdings.

60.   As iGas Holdings did not exist until June of 2021, it could not have taken control of BMP International and BMP USA before then.

61.   Any such transfer of control therefore necessarily happened (a) almost two years after T.T. had sued BMP International and BMP USA in August of 2019; and (b) after the procedures for the HFC allowances had been established.

62.   The EPA later issued iGas Holdings 25,853,657.7 metric tons of exchange value equivalent HFC consumption allowances for 2022, which was the fourth highest total of any entity in the United States.

63.   Essentially by (a) creating a new corporation (i.e., iGas Holdings); (b) transferring ownership of both BMP Defendants in that Lawsuit to iGas Holdings; and (c) filing for EPA HFC allowances through that corporation—all

while the Lawsuit was pending—BMP International and BMP USA engaged in a scheme to improperly transfer their most valuable assets out of the reach of T.T. without adequate, if any, consideration, and to render the BMP Defendants judgment proof.

**D.    Meng stripped BMP International and BMP USA of most, if not all, meaningful assets.**

64.    Other than their valuable rights to seek HFC allowances, BMP International and BMP USA had few, if any, assets.

65.    For example, neither BMP International nor BMP USA owned the warehouse at 8105 Anderson Road in Tampa that they both utilized.  Instead, Meng made sure that the warehouse was owned by a separate LLC in his conglomerate, 8105 Anderson LLC.

66.    Additionally, on information and belief, BMP International and BMP USA transferred goods remaining in their inventories to other companies owned and operated by Meng—without adequate, if any, consideration—for subsequent sale to customers.

67.    Meng represented that his plans were to make Coolmaster USA, Inc. the main company in his conglomerate for the sale of parts and iGas USA, Inc. his main company for the sale of gases.

68.    BMP USA even transferred substantially all of the equipment it had utilized for its operations.

69.     In or around June 2020—while the Lawsuit was pending—BMP USA transferred over $750,000 worth of equipment to iGas USA without adequate, if any, consideration.

70.     BMP USA purchased much of that equipment from T.T. and failed to pay for it.  Indeed, invoices for that equipment are part of the Lawsuit.

71.     Soon after that transfer of that equipment, iGas USA settled with T.T. and was therefore dismissed from the suit.

72.     iGas USA had only ever owed $1.2 million to T.T., far less than the over $70 million owed by the BMP Defendants.

73.     The Defendants' scheme to transfer the BMP Defendants' (a) rights to HFC allowances; (b) inventories; and (c) equipment left BMP International and BMP USA without adequate resources to pay T.T. the debts they owe.

74.     T.T. has engaged Greenberg Traurig, P.A. to represent it in this action and is obligated to pay counsel reasonable fees for their services.

75.     All conditions precedent to the commencement of this action and the granting of the relief requested have occurred, have been satisfied, or have been waived.

## COUNT I

### Fraudulent Transfer of Assets
### by BMP International and iGas Holdings

76.     T.T. incorporates the allegations set forth in paragraphs 1 through 75, above.

77.     BMP International transferred its right to seek HFC allowances to iGas Holdings with the actual intent to hinder, delay, or defraud T.T. in its efforts to collect on an eventual judgment in the Lawsuit and with the intent to render BMP International judgment proof.

78.     BMP International's fraudulent intent is evidenced by several "badges of fraud," including described in the following paragraphs.

79.     BMP International transferred its rights to HFC allowances to an insider, its new parent company, iGas Holdings.

80.     BMP International retained possession, custody, and control of the HFC allowances in all but title.

81.     Among other things, iGas Holdings operates (a) from the same location, (b) with the same employees, and (c) the same equipment as BMP International.  Moreover, BMP International is controlled by its president Ben Meng, who also controls iGas Holdings as its president.

82.    Ben Meng's joint control of the transferor (BMP International) and transferee (iGas Holdings) allows Meng to continue to use the HFC allowances for his benefit but ostensibly protects them from collection efforts by T.T.

83.    Thus, to anyone other than a creditor of BMP International— including customers of the Defendants—there is no change in how refrigerant gases imported using the HFC allowances will be treated.

84.    Also, BMP International was well aware of the Lawsuit when it transferred its rights to HFC allowances to iGas Holdings.

85.    iGas Holdings was formed on or about June 29, 2021, while the Lawsuit was pending.  In fact, that same day, Ben Meng filed a Declaration in the Lawsuit in support of an unsuccessful Motion for Protective Order seeking to avoid being deposed in his role as president and corporate representative of BMP International.

86.    Moreover, as shown on Exhibit A, Eric Neilsen, the principal of Nielsen Law Group, is identified as the incorporator in Article VI of iGas Holdings Articles of Incorporation. In Article V of Exhibit A, Mr. Nielsen's firm, Nielsen Law Group, P.A., is listed as iGas Holdings' agent for service of process.

87.    Mr. Nielsen and his firm were well aware of the Lawsuit when they participated in the (a) formation of iGas Holdings; and (b) the subsequent transfer to iGas Holdings of BMP rights to HFC allowances—as was Ben Meng. Indeed,

Mr. Nielsen of Nielsen Law Group, P.A. is counsel of record for BMP International (and BMP USA) in the Lawsuit.

88.     The badges of fraud described in the preceding paragraphs, along with others that will be established through discovery, demonstrate a clear intent by iGas Holdings, BMP International, and Ben Meng to conceal BMP International's assets by placing its HFC allowances outside the reach of its creditor T.T. through the transfer to iGas Holdings.

89.     BMP International did not receive reasonably equivalent value for its rights to HFC allowances. Indeed, on information and belief, it received inadequate, if any, consideration in return.

90.     At the time of the transfer, BMP International knew that without rights to the HFC allowances to either (a) sell for value; or (b) use to import refrigerant gas that it could sell for value, it had insufficient funds to pay the nearly $14 million it owed to T.T.

91.     In fact, without rights to the HFC allowances BMP International has few, if any, assets to pay its debt and is insolvent.

92.     BMP International, iGas Holdings, and Ben Meng intended to render BMP International judgment proof from T.T. through the transfer of the rights to HFC allowances described above.

WHEREFORE, T.T. demands (1) judgment against BMP International and iGas Holdings for monetary damages; (2) an attachment on rights to HFC allowances transferred from BMP International to iGas Holdings; (3) the appointment of a Receiver to oversee the HFC allowances until T.T. has been fully compensated; (4) an injunction against further disposition of those HFC allowances without Court permission; and (5) such additional relief as is necessary to protect T.T.'s rights and interests.

## COUNT II
### Fraudulent Transfer of Assets
### by BMP USA and iGas Holdings

93.     T.T. incorporates the allegations set forth in paragraphs 1 through 75, above.

94.     BMP USA transferred its right to seek HFC allowances to iGas Holdings with the actual intent to hinder, delay, or defraud T.T. in its efforts to collect on an eventual judgment in the Lawsuit and with the intent to render BMP USA judgment proof.

95.     BMP USA's fraudulent intent is evidenced by several "badges of fraud," including described in the following paragraphs.

96.     BMP USA transferred its rights to HFC allowances to an insider, its new parent company, iGas Holdings.

97.   BMP USA retained possession, custody, and control of the HFC allowances in all but title.

98.   Among other things, iGas Holdings operates (a) from the same location, (b) with the same employees, and (c) the same equipment as BMP USA. Moreover, BMP USA is controlled by its president Ben Meng, who also controls iGas Holdings as its president.

99.   Ben Meng's joint control of the transferor (BMP USA) and transferee (iGas Holdings) allows Meng to continue to use the HFC allowances for his benefit but ostensibly protects them from collection efforts by T.T.

100.   Thus, to anyone other than a creditor of BMP USA—including customers of the Defendants—there is no change in how refrigerant gases imported using the HFC allowances will be treated.

101.   Also, BMP USA was well aware of the Lawsuit when it transferred its rights to HFC allowances to iGas Holdings.

102.   iGas Holdings was formed on or about June 29, 2021, while the Lawsuit was pending.  In fact, that same day, Ben Meng filed a Declaration in the Lawsuit in support of an unsuccessful Motion for Protective Order seeking to avoid being deposed in his role as president and corporate representative of BMP USA.

103.   Moreover, as shown on Exhibit A, Eric Neilsen, the principal of Nielsen Law Group, is identified as the incorporator in Article VI of iGas Holdings

Articles of Incorporation. In Article V of Exhibit A, Mr. Nielsen's firm, Nielsen Law Group, P.A., is listed as iGas Holdings' agent for service of process.

104.   Mr. Nielsen and his firm were well aware of the Lawsuit when they participated in the (a) formation of iGas Holdings; and (b) the subsequent transfer to iGas Holdings of BMP rights to HFC allowances—as was Ben Meng. Indeed, Mr. Nielsen of Nielsen Law Group, P.A. is counsel of record for BMP USA (and BMP USA) in the Lawsuit.

105.   The badges of fraud described in the preceding paragraphs, along with others that will be established through discovery, demonstrate a clear intent by iGas Holdings, BMP USA, and Ben Meng to conceal BMP USA's assets by placing its HFC allowances outside the reach of its creditor T.T. through the transfer to iGas Holdings.

106.   BMP USA did not receive reasonably equivalent value for its rights to HFC allowances. Indeed, on information and belief, it received inadequate, if any, consideration in return.

107.   At the time of the transfer, BMP USA knew that without rights to the HFC allowances to either (a) sell for value; or (b) use to import refrigerant gas that it could sell for value, it had insufficient funds to pay the nearly $58 million it owed to T.T.

108.   In fact, without rights to the HFC allowances BMP USA has few, if any, assets to pay its debt and is insolvent.

109.   Indeed, BMP USA, iGas Holdings, and Ben Meng intended to render BMP USA judgment proof from T.T. through the transfer of the rights to HFC allowances described above.

WHEREFORE, T.T. demands (1) judgment against BMP USA and iGas Holdings for monetary damages; (2) an attachment on rights to HFC allowances transferred from BMP USA to iGas Holdings; (3) the appointment of a Receiver to oversee the HFC allowances until T.T. has been fully compensated; (4) an injunction against further disposition of those HFC allowances without Court permission; and (5) such additional relief as is necessary to protect T.T.'s rights and interests.

## COUNT III

### Fraudulent Transfer of Assets
### by BMP USA and iGas USA

110.   T.T. incorporates the allegations set forth in paragraphs 1 through 46 and 64 through 75, above.

111.   BMP USA transferred over $750,000 worth of equipment to iGas USA with the actual intent to hinder, delay, or defraud T.T. in its efforts to collect on an eventual judgment in the Lawsuit.

112.   BMP USA's fraudulent intent is evidenced by several "badges of fraud," including the following.

113.   iGas USA and BMP USA are both subsidiaries of iGas Holdings and controlled by Ben Meng.  Accordingly, the transfer was to an insider.

114.   BMP USA retained possession, custody, and control of the equipment in all but title.

115.   Among other things, iGas USA operates out of the same location with the same employees and the same equipment as BMP USA.  Moreover, BMP USA is controlled by its president Ben Meng, who also controls iGas USA as its president.

116.   The joint control of the transferor and transferee allows Mr. Meng to continue to use the asset for his benefit but protects the asset from collection efforts by T.T.

117.   Thus, to anyone other than a creditor of BMP USA, there is no change in how the equipment is treated.

118.   Also, BMP USA knew of the Lawsuit when it transferred equipment to iGas USA.  The transfer occurred in or about June 2020, shortly before iGas USA was dismissed from the lawsuit in October 2020.

119.   The badges of fraud described in the preceding paragraphs, along with others that will be established through discovery, demonstrate a clear intent by iGas

USA, BMP USA, and Ben Meng to conceal BMP USA's assets by placing its equipment outside the reach of its creditor T.T. through the transfer to iGas USA.

120.   BMP USA did not receive reasonably equivalent value for the equipment.

121.   At the time of the transfer, BMP USA knew that it had insufficient funds to pay the nearly $58 million it owed to T.T.

122.   In fact, BMP USA has few, if any, assets to pay its debt and is insolvent.

WHEREFORE, T.T. demands (1) judgment against BMP USA and iGas USA for monetary damages; (2) an attachment on the equipment transferred from BMP USA to iGas USA; (3) an injunction against further disposition of the equipment without Court permission; and (4) such additional relief as is necessary to protect T.T.'s rights and interests.

[Attorney's Signature Appears on Following Page]

Dated:  August 16, 2022          Respectfully submitted,

*/s/ David B. Weinstein*
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Jennifer W. Corinis (FBN 49095)
corinisj@gtlaw.com
Christopher White (FBN 1022219)
whitech@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 East Kennedy Blvd., Suite 1900
Tampa, Florida 33602
(813) 318-5700 - telephone
(813) 318-5900 - facsimile