## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| T.T. INTERNATIONAL CO., LTD. | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 8:22-cv-01876-WFJ-JSS |
| | ) | |
| BMP INTERNATIONAL, INC. *et al.* | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION

BMP International, Inc. ("BMP Int'l"), BMP USA, Inc. ("BMP USA"), iGas USA, Inc. ("iGas USA"), and iGas Holdings, Inc. ("iGas Holdings") (collectively "Defendants") move to compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA") and to dismiss all claims in the above-captioned litigation under Federal Rule of Civil Procedure 12(b)(1):

### Introduction

Defendants move to compel arbitration because Plaintiff T.T. International Co., Ltd. ("Plaintiff") agreed to arbitrate this dispute in Shanghai, People's Republic of China under the arbitration rules of the Shanghai International Economic and Trade Arbitration Commission ("SIETAC") when it entered into a

1

Joint Venture Contract[1]. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), a treaty to which the United States and China are signatories and is required to be enforced in the United States pursuant to FAA § 201, requires enforcement of "commercial arbitration agreements in international contracts," including this one. *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 545 (11th Cir. 2016).

## Facts

### A.   *Plaintiff and Defendants are parties to the "Joint Ventures Contracts."*

On February 28, 2018, Meng Xianbin ("Meng"), as President of Defendants BMP Int'l and BMP USA; Zhejiang Juhua Co., Ltd. ("Juhua"); and Plaintiff entered the Joint Venture Contracts ("JVC"). *See* **Exhibit A** (Certified Translation of the JVC), **Exhibit B** (Executed JVC), **Exhibit C** (Declaration of Meng Xianbin). The scope of the agreement "includes: production, procurement, mixing, storage, transportation and sales of refrigerants and related products (including foaming agents, propellants, medical aerosols, cleaning agents, fire extinguishing agents and other similar products)." JVC ¶ 4.3. To achieve this purpose, the parties agreed

---

[1] SIETAC is also sometimes referred to, including in the parties agreement, as the Shanghai International Arbitration Center or the SHIAC. SIETAC's current arbitration rules may be found on SIETAC's website: https://www.shiac.org/pc/SHIAC?moduleCode=arbitrate_rules&securityId=65cK7xp1XAvPW8AJ_GeQAQ.

to form iGasUSA Inc. *Id.* ¶ 1.1, "Establishment of the Joint Venture Company" ¶ 3. The JVC contemplates movement of the aforementioned goods from China to the United States. By its own terms, the JVC is governed by Chinese law. *Id.* ¶ 22.1. The JVC *requires* BMP Int'l and BMP USA to transfer key assets to the joint venture. *Id.* ¶ 7.1(d)-(g). It also requires BMP Int'l and BMP USA to transfer *all employees* to the joint venture to meet "the requirements of the joint venture company." *Id.* ¶ 14.1. Despite being a party to the JVC, Plaintiff makes allegations of improper transfers involving entities named in the JVC related to the procurement, transportation, and sale of refrigerants and related products. *See* Compl., Doc. 1, ¶¶ 26-34.

The JVC, which Plaintiff executed, imposes substantial rights and obligations on Plaintiff. For example, Plaintiff is required to give priority to purchasing the products of Juhua. Ex. A, JVC ¶ 11.1. And, the JVC seemingly prohibits Plaintiff from engaging in any new refrigerant related business activities outside the JVC's scope. *Id.* ¶ 7.2(c). In exchange, among other consideration, the JVC obligates Juhua to provide "priority product guarantees, price concessions and other supports." *Id.* ¶ 7.2(a). Further, the JVC obligates Juhua to "assist the joint venture in purchasing equipment, instruments, raw materials and services in China (if necessary)." *Id.* ¶ 7.2(c). In short, Plaintiff is required to favor Juhua in its efforts to acquire refrigerants and related products, and in return Plaintiff has a

3

right to preferential pricing and sourcing assistance from Juhua. The purpose of that straightforward agreement was to maximize iGas USA's success—the joint venture the parties were creating through the JVC. Reflecting that Plaintiff was more than a third-party beneficiary to the JVC, Zhang Tianli, Plaintiff's president, signed the JVC:



*See* **Exhibit B**.

    **B.**    *The JVC contains an arbitration clause.*

Paragraph 22.2 of the JVC requires arbitration of any dispute arising out of or related to the JVC:

> Any dispute arising from the performance of this contract or related to this contract shall be submitted to Shanghai International Economic and Trade Arbitration Commission (Shanghai International

Arbitration Center, "SIETAC") for arbitration as a final settlement, and the place of arbitration shall be in Shanghai. The arbitration shall be conducted in accordance with the latest version of the arbitration rules of SIETAC in force at the time of application for arbitration, and the language of the arbitration shall be Chinese. There shall be three arbitrators. Each Party shall appoint an arbitrator within fourteen days after receiving the arbitration notice from the arbitration commission, and the two arbitrators designated by both parties shall appoint the third arbitrator as the presiding arbitrator of the arbitration tribunal. If, within twenty-eight days of receipt of the notice of arbitration, one party fails to appoint its arbitrator, or the two arbitrators appointed by the parties fail to agree on the appointment of a third arbitrator, that arbitrator shall be appointed by SIETAC in accordance with its arbitration rules. The arbitrator shall not be a current or former employee, agent, consultant, or attorney of either party. Arbitrators may be selected from persons other than the list of arbitrators of the Arbitration Commission. The arbitration award shall be based on a majority opinion of the arbitrators and made in writing.

## C. *Plaintiff fails to mention the JVC despite its clear relevance.*

Plaintiff accuses Defendants of fraudulently transferring assets related to the acquisition, importation, and sale of "refrigerants, disposable cylinders, and related products shipped to Defendant BMP International and refrigerants, disposable cylinders, and related products shipped to Defendant BMP USA" in its complaint. *See* Compl., Doc. 1, ¶ 3. Plaintiff alleges BMP Int'l and BMP USA failed to pay for those goods. *Id.*

Plaintiff then alleges: "iGas Holdings and iGas USA engage in substantially

5

the same business from the same location with substantially the same employees and equipment as BMP International and BMP USA." *Id.* ¶ 10. Plaintiff details the history of its relationship with Defendants while completely omitting the existence and terms of the JVC. That is deeply problematic: Plaintiff is *suing* BMP Int'l, BMP USA, and iGas USA without ever mentioning in its 122 paragraph Complaint that it was a party to a joint venture agreement with BMP Int'l and BMP USA intended to facilitate the creation of iGas USA and governing the transactions about which Plaintiff complains. Arguably, Plaintiff is a constituent part of iGas USA.

Plaintiff alleges, for example: "While the Lawsuit was pending, Meng also caused BMP USA to transfer over $750,000 worth of equipment to another company he controls, iGas USA, Inc." Compl., Doc. 1, ¶ 9. Consequently, through Plaintiff's Count III, "Fraudulent Transfer of Assets by BMP USA and iGas USA," Plaintiff alleges that BMP USA—its contractual affiliate—transferred assets to the very joint venture the JVC established. And, the JVC, which Plaintiff signed, specifically requires shifting business and assets from BMP to iGas USA. Ex. A, JVC ¶ 7.1(d)-(g).

Plaintiff's two other counts challenge transfers by BMP USA and BMP Int'l to iGas Holdings, the parent company of the two. Those allegedly fraudulent transfers involve the purported transfer of "HFC allowances." Once again, Plaintiff ignores that the JVC substantially affects the parties' rights related to HFC

allowances. Specifically, paragraph 11.1 of the JVC anticipates both the creation of HFC allowances, which were first allotted in 2020, and the subsequent treatment of those allowances by the JVC parties:

> If the U.S. implements a quota system for HFCs products in the future, Party A and its affiliates shall obtain the HFCs product quotas for the accumulated sales volume before the establishment of the joint venture company. After the establishment of the joint venture company, the joint venture company shall obtain the HFCs product quotas for the accumulated sales volume in the name of the joint venture company. The joint venture company shall give priority to using the quota owned by the joint venture company in its operation, and the quota of Party A and its affiliates may be used only after the quota of the joint venture company is exhausted.  When the quota of Party A and its affiliates exceeds the normal sales demand of the joint venture company in the current year, the two parties shall discuss whether the joint venture company will establish an inventory for the remaining quota of Party A and its affiliates in the current year. If Party B does not agree to establish an inventory, Party A and its affiliates can build an inventory within its remaining quota range by themselves, but should there be business conflicts with the joint venture company in accordance with the provisions of this contract in the future because of its own inventory building, both parties need to negotiate and resolve it separately.  The affiliate of Party A shall give priority to purchase the products of Party B when using the quota.

While paragraph 11.1 is complex, what is immediately clear is that it governs the parties' rights and obligations with respect to the HFC allowances which Plaintiff alleges have been fraudulently transferred.

In short, Plaintiff tells a long story about commonly owned companies

moving money and allowances between one another for the purpose of avoiding debts. What Plaintiff entirely omits is that there is a contract—the JVC—which substantially governs the parties' relationship on exactly these issues. Moreover, Plaintiff ignored its promise to arbitrate these disputes.

## Legal Standard

"The New York Convention generally requires the courts of signatory nations to give effect to private arbitration agreements and to enforce arbitral awards made in other signatory nations." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015); *Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard, B.V.*, 855 F. App'x 468, 471–72 (11th Cir. 2021). Section 201 of the FAA requires courts to enforce the Convention. *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d at 1262; *see also* 9 U.S.C. § 201 ("The [Convention] shall be enforced in United States courts in accordance with this chapter.").

An arbitration agreement is subject to the Convention when four elements are met: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has

some reasonable relation with one or more foreign states." *Bautista v. Star Cruises*, 396 F.3d 1289, 1295, 1295 n.7 (11th Cir. 2005).

In assessing if parties are required by an agreement to arbitrate pursuant to the Convention, "FAA principles guide [our] analysis." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("The court is to make this determination by applying the federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.") (citation and internal quotation marks omitted). Following the FAA, a court applies "presumption in favor of arbitration[.]" *Princess Cruise Lines,* 657 F.3d at 1214.

"[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)). The FAA therefore reflects a "liberal federal policy favoring arbitration" and "makes arbitration agreements valid, irrevocable, and enforceable as written . . . ." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) (internal quotations omitted). Through the FAA, Congress intended "to reverse longstanding judicial hostility to arbitration agreements and to place them on the same footing as other

contracts." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (internal quotation and alteration omitted).

The United States Supreme Court recognizes the presumption in favor of arbitration applies with "special force in the field of international commerce." *Mitsubishi Motors Corp.*, 473 U.S. at 631. That presumption requires the Court to resolve any questions concerning the scope of arbitrable issues in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). After conducting only a limited inquiry, "[i]n the absence of an affirmative defense, a district court must compel arbitration under the Convention if four jurisdictional requirements are met." *Alberts v. Royal Caribbean Cruises, Ltd.*, 834 F.3d 1202, 1204 (11th Cir. 2016).

## <u>Analysis</u>

Plaintiff's claims must be arbitrated because the Convention's four jurisdictional requirements are met. With respect to those four jurisdictional requirements, there can be no serious dispute over the latter three. The JVC provides for arbitration in the territory of a signatory of the Convention as China is a signatory to the Convention. The agreement arises out of a commercial relationship as the sale and transportation of refrigerants is clearly commercial.

The commercial relationship has some reasonable relation with one or more foreign states as the goods in question were procured and sold in China by Plaintiff, a Chinese company, to Defendants. And, the parties agreed to have the China-centric JVC governed by Chinese law. The only issue remaining is if Plaintiff agreed to arbitrate this dispute. It did.

A.   **Defendants may enforce the JVC's arbitration provision even if they are non-signatories to the JVC.**

Defendants are entitled to enforce the JVC's arbitration clause even though they some or all *may* technically be non-signatories. The non-signatory doctrine provides that a party may invoke an arbitration agreement that it did not sign "if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). The Eleventh Circuit has enumerated three bases under which non-signatories may compel arbitration: (1) equitable estoppel; (2) agency or related principles; and (3) third-party beneficiary. *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).

Under the theory of agency or related principles, arbitration should be permitted because "the relationship between the signatory and non-signatory defendants is sufficiently close that only by permitting the non-signatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer*, 177 F.3d at 947.

Here, Meng's ownership and control of BMP Int'l, BMP USA, and iGas USA

11

is the very premise of *both* the JVC and Plaintiff's Complaint. *See* JVC, ¶ 1.1; Compl., Doc. 1, ¶¶ 4-11. Plaintiff cannot sue Defendants alleging unity of ownership and control but then disclaim those facts for the purpose of avoiding an arbitration agreement. *Syscom (USA), Inc. v. Nakajima USA, Inc.*, No. CV1407137ABJPRX, 2014 WL 12695688, at *1 (C.D. Cal. Dec. 3, 2014) (granting Defendants' motion to compel arbitration in a fraudulent conveyance case where only one of the three defendants was a signatory because plaintiff "affirmatively alleges each of the non-signatory defendants was the agent or alter ego of [defendant] in committing each and every act alleged in the complaint, he is bound by the legal consequences of those allegations"). For example, the JVC provides that Party A, Ben Meng, shall: "At an appropriate time after the establishment of the joint venture company, sell the above-mentioned tangible assets and the remaining empty steel cylinders under the name of it or its affiliates (for the sake of this article, excluding T.T. International) to the joint venture company at a fair market price and conditions, and assist in handling various transfer procedures to ensure that the joint venture company legally owns the above-mentioned tangible assets." JVC ¶ 7.1(f).

The JVC treats BMP Int'l and BMP USA as parties to the JVC. The JVC expressly provides "All employees under the name of BMP, the affiliate of Party A, shall be transferred to the joint venture company under the premise of meeting

the requirements of the joint venture company." JVC ¶ 14.1. Any holding that the JVC's arbitration provision does not apply to the defined "Affiliates" of Meng would eviscerate the JVC's arbitration agreement and be contrary to the clear intent of the parties to the JVC.

Equitable estoppel also applies. Equitable estoppel allows a non-signatory to compel arbitration in two different circumstances. The first is where the claims "arise out of or relate to" the agreement containing the arbitration provision. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999). For the "claim to be considered 'arising out of or relating to' an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Seifert*, 750 So. 2d at 638.

Here, this standard is met because the JVC must be considered when evaluating the merits of Plaintiff's fraudulent transfer claims. As discussed above, Plaintiff signed the JVC which expressly contemplates the transfers about which Plaintiff now complains.  Plaintiff's claims arise out of or relate to the JVC.

The second estoppel-based justification applies when there are allegations of concerted action by both a non-signatory and one or more of the signatories to the contract. *See, e.g., MS Dealer*, 177 F.3d at 942; *Armas v. Prudential Sec., Inc.*, 842 So. 2d 210 (Fla. 3d DCA 2003). This standard is also clearly met and allows iGas Holdings to enforce the JVC's arbitration provision. The very crux of Plaintiff's

13

claims is that Defendants moved assets amongst themselves to avoid paying monies owed to Plaintiff.

Finally, BMP Int'l, BMP USA, and iGas USA could—if deemed non-parties to the JVC—enforce the JVC's arbitration clause under the third-party beneficiary exception as all three are "expressly intended to benefit" from the JVC. *Henderson v. Idowu*, 828 So. 2d 451, 452 (Fla. Dist. Ct. App. 2002) (holding non-signatory to the arbitration agreement was a third-party beneficiary and thus entitled to invoke the arbitration provision).

### B.   *By the unambiguous terms of the JVC, the Parties delegated issues of arbitrability to the arbitrator.*

Once the Court determines that the parties are entitled to enforce the JVC's arbitration agreement, it must delegate any arbitrability issues to the arbitrator. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 529 (2019). "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.*

The analysis is no different under the Convention. "[W]here arbitrability has been clearly and unmistakably delegated to the arbitrator, 'the [New York] Convention ... does not sanction [a Court's] second-guessing the

14

arbitrator's construction of the parties' agreement.'" *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 66 (D.D.C.), *judgment entered*, 987 F. Supp. 2d 82 (D.D.C. 2013), *aff'd sub nom. Chevron Corp. v. Ecuador*, 795 F.3d 200 (D.C. Cir. 2015) (quoting *Parsons & Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 977 (2d Cir. 1974)).

Last, it is widely recognized that, if an agreement requiring arbitration specifies the arbitration rules to be applied, and if the arbitration rules to be applied provide that the arbitrator should decide issues of arbitrability, then the parties' agreement is deemed to unambiguously require arbitration of arbitrability issues. *E.g. Chevron Corp.*, 949 F. Supp. 2d at 67; *Gold Rsrv. Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 121 (D.D.C. 2015); *Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014).

Here, SIETAC's Rules provide for arbitration of arbitrability of a dispute. Article 6, Paragraph 1 of those rules provides: "SHIAC has the discretion to decide on the existence and validity of an arbitration agreement and its jurisdiction over an arbitration case." Article 6, Paragraph 2 provides in turn: "Where SHIAC is satisfied with *prima facie* evidence that an arbitration agreement providing for arbitration by SHIAC and binding on the parties exists, it may decide based on such evidence that it has jurisdiction over the arbitration case, and arbitration shall

proceed." *Chevron* and *Gold Reserve* hold that very similar language requires arbitration of arbitrability. *Chevron*, 949 F. Supp. 2d at 67; *Gold Rsrv.*, 146 F. Supp. 3d at 121 ("The Additional Facility Rules, in turn, explicitly provide that '[t]he Tribunal shall have the power to rule on its competence.' As Gold Reserve argues, '[B]y incorporating the ICSID Additional Facility Arbitration Rules into their arbitration agreement through the BIT, the parties agreed that the Tribunal would decide any issues of arbitrability.'"). Consequently, by executing the JVC, Plaintiff agreed to arbitrate the arbitrability of its claims.

> ### C. Even if the Court were to decide the arbitrability issue, Plaintiff's claims are related to the JVC and thus are arbitrable.

If this Court declines to delegate the issue of arbitrability to SIETAC, it must determine whether the dispute in question falls within the scope of the arbitration agreement. *U.S. Nutraceuticals, LLC*, 769 F.3d at 1311. The arbitration clause in the JVC states: "Any dispute arising from the performance of this contract or related to this contract shall be submitted to Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center, "SIETAC") for arbitration as a final settlement, and the place of arbitration shall be in Shanghai." Ex. A, JVC ¶ 22.2.

Courts recognize that arbitration clauses requiring arbitration of all disputes relating to or connected with an agreement are broader than clauses which merely require arbitration of disputes arising out of an agreement. *Jackson v. Shakespeare*

*Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) ("In contrast, an arbitration provision that is considered to be broad in scope typically requires arbitration for claims or controversies 'arising out of *or relating to*' the subject contract. The addition of the words 'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract—regardless of whether the claim is founded in tort or contract law.") (internal quotations and citations omitted); *Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018). Therefore, the JVC's arbitration clause requires arbitration of any dispute that touches on the matters covered in the JVC. And again, by its plain terms, the scope of the JVC relates to BMP Int'l, BMP USA, iGas USA, Plaintiff, and Juhua's efforts to import refrigerants and related goods from China to the United States for resale at a profit. Plaintiff's claims clearly touch on and are "related to" the JVC.

## Conclusion

The Court should compel Plaintiff's claims to arbitration. Plaintiff alleges various fraudulent transfer claims against Defendants based on transfers that are contemplated within the JVC. The JVC includes an arbitration clause requiring the Parties to submit any disputes arising from or related to the JVC. Plaintiff disregarded its contractual obligation to arbitrate and instead initiated this suit. Because Plaintiff's claims arise from or are related to the JVC, this Court should

compel arbitration, dismiss Plaintiff's claims in their entirety, and grant all other relief deemed just and equitable.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned counsel certifies she has conferred with Plaintiff's counsel, on March 24, 2023 via a telephone conference in a good faith effort to resolve the motion. On March 30, 2023, Plaintiff's counsel advised Plaintiff opposes the relief requested.

Dated: April 4, 2023                              Respectfully Submitted,

                                                  **HUSCH BLACKWELL LLP**

                                                  By: */s/ Buffey E. Klein*
                                                      Buffey E. Klein
                                                      Florida Bar No. 0034639
                                                      1900 N. Pearl, Suite 1800
                                                      Dallas, Texas 75201
                                                      (214) 999-6100
                                                      (214) 999-6170 (fax)
                                                      buffey.klein@huschblackwell.com

                                                      *Attorney for Defendants*

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 4, 2023, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Middle District of Florida and was served by operation of that Court's electronic filing system.

<u>/s/ Buffey E. Klein   </u>
Buffey E. Klein
