## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

T.T. INTERNATIONAL CO., LTD.,

      Plaintiffs,

v.

BMP INTERNATIONAL, INC.,          No. 8:22-cv-01876-WFJ-JSS
BMP USA, INC., IGAS USA, INC.,
and IGAS HOLDINGS, INC.

      Defendants.

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION

Plaintiff T.T. International Co., Ltd. files this Response in Opposition to Defendants' Motion to Dismiss and to Compel Arbitration ("Motion"). Arbitration is not required by any agreement between the parties here. But even if Defendants had a right to compel arbitration, they waived it by taking actions clearly inconsistent with an intent to arbitrate. Consequently, Defendants' Motion should be denied.

### INTRODUCTION

Since August 2019, Plaintiff T.T. and Defendants BMP USA, Inc., BMP International, Inc. (collectively, "BMP Defendants"), and iGas USA, Inc. have litigated a dispute arising from Defendants retaining—but failing to pay for—more than $74 million of HFC-containing refrigerants and related products ("goods"). *T.T.*

1

*Int'l Co., Ltd. v. BMP Int'l, Inc., et al.*, 8:19-cv-02044 ("Original Action").[1] Through nearly four years of litigation, Xianbin Meng has controlled both the BMP Defendants and iGas USA. Since the Original Action was filed, the parties have engaged in extensive discovery, argued motions for summary judgment, filed dozens of other substantive motions, and otherwise engaged the machinery of litigation and *resolved at trial* issues arising from Defendants' importation of goods from T.T. In this extensive litigation, *which required significant judicial resources*, T.T. has incurred over a million dollars in attorneys' fees and costs. In almost four years of litigation, Defendants *never* raised any agreement purportedly requiring T.T. to arbitrate.

In June 2021—while the Original Action was pending—the BMP Defendants' then trial counsel filed Articles of Incorporation for Defendant iGas Holdings, Inc., listing Meng as President. The BMP Defendants then represented to the Environmental Protection Agency that they were subsidiaries of iGas Holdings and transferred to it *extremely valuable assets*: *i.e.*, millions in annual allowances required to import HFC-containing refrigerants into the United States. The BMP Defendants earned those allowances based on their past refrigerant imports, including, importantly, the $74 million of refrigerants that Defendants ordered from T.T. and for which they failed to pay.

The Complaint here, filed August 16, 2022, includes claims arising from a mid-litigation transfer of assets without consideration, to remove the BMP

---

[1] In October 2020, Defendant iGas USA settled T.T.'s claims in the Original Action and was dismissed. (Original Action, Docs. 72, 75.)

Defendants' most valuable assets from T.T.'s reach and render them judgment-proof as to the Original Action. (Doc. 1.)[2]

Between August 29 and September 2, 2022,[3] T.T. proved at trial in the Original Action, that the BMP Defendants accepted, but failed to pay for the goods. The Court entered its Opinion and Order on February 3, 2023, finding for T.T. on its unjust enrichment claims. (Original Action, Doc. 214.) On March 6, 2023, the Court directed the Clerk to enter judgment against Defendants BMP International and BMP USA in the amounts of $17,616,549.74 and $71,165,915.64, respectively. (Original Action, Doc. 224 at 6.)

T.T.'s fraudulent transfer claims undeniably concern the commercial transactions from the Original Action. Defendants filed Answers on October 3, 2022, *which do not even mention arbitration*. (Docs. 15–18). Almost six months later, on March 31, 2023, Defendants filed a Motion for Leave to Amend their Answers, seeking to add affirmative defenses. (Doc. 29.) That motion remains pending.

On April 4, 2023, after *over three and a half years* of litigation in the Original Action and *eight months* here, Defendants first moved to dismiss this case and to compel arbitration in China, raising for the first time a challenge to this Court's subject matter jurisdiction based on an agreement ("Joint Venture Contract" or "JVC"), **signed in February 2018**. (Doc. 30-1.)

This untimely effort to compel arbitration should be denied, because (1) there

---

[2] After filing its Complaint, T.T. certified this case as a Related Action under Local Rule 1.07. (Doc. 10.)

[3] The Court heard closing arguments on September 12, 2022.

was no agreement between T.T. and Defendants to arbitrate these claims; (2) the agreement relied upon by Defendants was never performed and was revoked as to T.T. in or about July 2018; (3) the dispute does not arise out of the agreement; (4) even if an agreement to arbitrate existed and applied to T.T., Defendants waived their right to arbitrate by engaging in actions inconsistent with an intent to arbitrate; and (5) even if the dispute were arbitrable, dismissal is not the authorized remedy under the Federal Arbitration Act.

## PERTINENT FACTS

Meng's companies are Florida-based importers of refrigerant gases and related products. Zhejiang Juhua Co., Ltd. ("Juhua") is a partially state-owned, Chinese corporation that manufactures refrigerants and related products. T.T. is a privately-owned, Chinese company that exports refrigerant gases. (Declaration of T. Zhang ("Decl."), ¶ 3.) T.T. purchased refrigerants and related goods from Chinese companies and supplied them to companies controlled by Meng, including the BMP Defendants. (*Id.*, ¶ 4.)

In or around January 2018, T.T.'s President, Tianli Zhang, met with Meng and Juhua to discuss forming a joint venture, iGas USA. (*Id.*, ¶ 6.) Based on those meetings, Mr. Zhang believed he would serve on iGas USA's Board and that T.T. would profit from purchasing goods from Juhua and supplying them to Meng's companies. (*Id.*, ¶¶ 6, 7.) But the JVC conferred no such benefits to T.T. and, importantly, T.T. is not and has never been a party to the agreement. (*Id.*, ¶ 8.)

The JVC was signed in China on February 28, 2018. (JVC at 1.) And

significantly it is between "Party A", Meng, and "Party B", Juhua. (*Id.*) Neither T.T. nor Mr. Zhang is a party to the JVC. (JVC, ¶ 2.) Moreover, the JVC only refers to T.T. as an "affiliate." But T.T. does not meet that term as defined. The JVC defines "Affiliate" as a "person or legal entity that is directly or indirectly controlled by a party, is under common control with that party, or controls that party." (JVC at 2.) T.T. is an independent legal entity that has *never* controlled, been controlled by, or been under common control with, either Meng or Juhua. (Decl., ¶ 5.)

The JVC also enumerates the responsibilities of Party A (Meng) and Party B (Juhua). Meng "shall not engage in any business related to refrigerants and similar products outside the joint venture company through a new establishment, arrangement by agreement, or otherwise." (JVC, ¶ 7.1(c).) Juhua must assist the joint venture with priority product and pricing guarantees. (JVC, ¶ 7.2(c).) But the JVC does not recite any benefit for T.T.

Mr. Zhang signed the JVC on behalf of T.T., not as a party, but as an independent supplier with an interest in conducting business with the parties on a preferential basis. (Decl., ¶¶ 8–9.) T.T. neither gave nor received anything of value in connection with the JVC. (*Id.*, ¶ 14.) The JVC "shall be legally binding upon and shall inure to the benefit of **the parties** hereto and their respective legal successors and assigns." (JVC, ¶ 23.2) (emphasis added). The JVC also states that the contract constitutes "the entire agreement reached between **the parties** on the subject matter of this contract, and replaces all previous consultations, negotiations and agreements reached between **the parties** on the subject matter." (JVC, ¶ 23.6) (emphasis added).

The JVC's arbitration provision: "[a]ny dispute arising from the performance of this contract or related to this contract shall be submitted to Shanghai International Economic and Trade Arbitration Commission for arbitration" and that "**[e]ach party** shall appoint an arbitrator . . . ." (JVC, ¶ 22.2.) (emphasis added). Again, the arbitration provision references **only the parties**, not any so-called "affiliates." And the arbitration provision makes no mention of any agreement to arbitrate the issue of arbitrability. (*Id.*)

Between the signing of the JVC and the first week of August 2018, T.T. shipped refrigerant goods to the BMP Defendants and to iGas USA, but T.*T. did not ship any goods manufactured by Juhua during that time*. (Decl., ¶ 13.) And as shown in the Original Action, T.T. received only partial payment. (*Id.*) Indeed, *T.T. received no consideration whatsoever*, before or after February 28, 2018, for its purported participation in the joint venture. (*Id.*, ¶ 14.) Among other things, T.T. *never* received any shares or distributions from iGas USA. (*Id.*, ¶ 15.)

In July 2018, Meng informed Mr. Zhang that T.T.'s role as a supplier for his companies was terminated. (*Id.*, ¶17.) Juhua then supplied the goods to Meng's companies directly. (*Id.*, ¶ 18.) Since August 2018, T.T. has had no business relationship with Meng, the BMP Defendants, iGas USA, or iGas Holdings. (*Id.*, ¶ 20.) Based on the words, actions, and omissions of Meng and Juhua, Mr. Zhang considered the JVC revoked as to T.T.'s contemplated involvement. (*Id.*, ¶ 19.)

## LEGAL STANDARD

The determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

When presented with a motion to compel arbitration, a court must consider three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Amargos v. Verified Nutrition, LLC*, No. 22-cv-22111, 2023 WL 1331261, *3 (S.D. Fla. Jan. 30, 2023) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 Fed. Appx. 842 (11th Cir. 2011)).

## ARGUMENT

### A.     No written agreement to arbitrate exists between T.T. and the Defendants.

"Parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (citations omitted). When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("[S]tate law governs the interpretation and formation of such agreements.").

Under Florida law, the parties' intent controls. The contract's language is the best evidence of the parties' intent, and a court should look to the contract's plain meaning when interpreting it. *Herpich v. Estate of Herpich*, 994 So. 2d 1195, 1197 (Fla. 5th DCA 2008). A district court considering an agreement to arbitrate, "should give to the [party denying the agreement] the benefit of all reasonable doubts and inferences that may arise." *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785–86 (11th Cir. 2008).

### 1.   T.T. was not a party to the JVC and is not bound by its terms.

In support of their motion to compel T.T. to arbitrate its claims, Defendants rely on a JVC between Meng and Juhua. Contrary to Defendants' unsupported assertion, T.T. was never a party to the JVC. Mr. Zhang signed the JVC on behalf of T.T. only as an independent supplier with an interest in conducting business with the joint venture on a preferential basis. (Decl., ¶ 9.) The JVC explicitly defines T.T. as an "affiliate" to the joint venture rather than a "party." Importantly, the JVC refers to "affiliates" in several places throughout the body of the agreement, while omitting the term from critical paragraphs, including the paragraph that defines the **parties** bound by the JVC (JVC ¶ 23.2.) and the paragraph that describes the obligations of the **parties** to the arbitration agreement (JVC ¶ 22.2) ("Each **party** shall appoint arbitrator within fourteen days after receiving the arbitration notice from the arbitration commission, and the two arbitrators designated **by both parties** shall appoint the third arbitrator. . .") (emphasis added). The plain language of the JVC

demonstrates that its drafters intended to limit the scope of the application to the affiliates by referencing them only in limited provisions.

The circumstances of the JVC's execution also confirm T.T. was not a party. T.T. exchanged no consideration in connection with the JVC, let alone any consideration for an agreement to arbitrate. Lack of consideration invalidates the contract as to T.T. *See S.D.S. Autos, Inc. v. Chrzanowski*, 976 So. 2d 600, 605 (Fla. 1st DCA 2007) (noting that defenses to contract enforcement, including lack of consideration, may render an arbitration provision unenforceable).

At most, T.T. was a contemplated third-party beneficiary that expected to benefit from the formation of the JVC through continued business with its parties. Generally, a third-party beneficiary to a contract cannot be compelled to arbitrate. *See Mendez v. Hampton Court Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016). "Critically, the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around." *Id.* at 149. The court explained, while a third-party beneficiary cannot sue to enforce a contract and argue it is not bound by its terms, a third-party beneficiary who does not sue to enforce the contract is not bound by the terms to which she did not agree. *Id.*

T.T. was not a party to the JVC and thus not a party to any agreement within the JVC to arbitrate disputes between Meng and Juhua. Even if the JVC were intended to confer some benefit on T.T.—though the four corners of the JVC contain no such benefit—that is not enough to bind T.T. to arbitrate where T.T. has not sued

9

to enforce the contract. Therefore, Defendants' attempt to enforce the arbitration provision of the JVC against T.T. fails on this ground alone.

### 2. Defendants, as non-parties to the JVC, cannot enforce the arbitration provision based on the facts of this case.

*None of the Defendants were signatories to the JVC*. And while a nonparty, non-signatory to a contract may have the legal right to enforce its provisions through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver [or] estoppel," Defendants have not shown that any of these limited exceptions apply. *See Lawson v. Life of the S. Ins. Co.,* 648 F.3d 1166, 1168 (11th Cir. 2011).

Defendants first argue that as non-signatories they can enforce the arbitration provision under agency principles. Defendants do not cite any Florida law to support their position. "Under Florida's agency exception, non-signatories may compel arbitration where the **claims against the non-signatories arose due to their activities as agents of the signatory**, **and** where the **non-signatories'** liability and the **signatory's liability** are based on the same set of operative facts." *Hmied v. Timpano Acquisition, LLC,* 6:13-cv-1002-Orl-36KRS, 2014 WL 1293362, *6 (M.D. Fla. March 28, 2014) (emphasis added). "Accordingly, a requirement of the agency exception is that the non-signatories were indeed acting as *agents* of the signatory." *Id.* Defendants fail to satisfy this standard.

First, nothing suggests that Defendants were acting as Meng's agent.[4] Consequently, the claims against Defendants cannot possibly arise from their activities as Meng's agent as required to establish the first element for the agency exception. Further, Defendants' liability and Meng's liability cannot be based on the same set of operative facts to satisfy the second element because Meng is *not* a Defendant. Accordingly, Defendants' argument that they can enforce the arbitration agreement under Florida agency principles fails.

Defendants' reliance on *Syscom (USA), Inc. v. Nakajima USA, Inc.*, No. CV 14–07137–AB (JPRx), 2014 WL 12695688 (C.D. Cal. Dec. 3, 2014), is misplaced. In *Syscom*, a contract action, the plaintiff conceded that the contract contained a binding and enforceable arbitration agreement as to one signatory defendant. The plaintiff then alleged that the other non-signatory defendants were the agents or alter egos of the one signatory defendant. Under these facts, the court determined "an agent or alter ego of a contract signatory may be bound by, and invoke the protection of, the contract." *Syscom (USA), Inc.*, 2014 WL 12695688, at *3.

*Syscom* does not apply. Unlike the plaintiff in *Syscom*, T.T. disputes there is a binding and enforceable arbitration agreement with *any* Defendant. And because no Defendant is a signatory to the purported arbitration agreement, this case could not possibly fall within the ambit of the *Syscom* ruling. Also, unlike *Syscom*, T.T. is not

---

[4] The JVC makes clear that Meng is only signing on behalf of himself, personally, and not in any representative capacity. To this point, Meng himself is defined as the party to the JVC, not any company. Meng also signed on behalf of himself, personally, whereas the representative for Party B, Zhejiang Juhua Co., Ltd., signed in a representative capacity on behalf of the company and listed his position as "Board Director."

suing to enforce the contract that contains the arbitration agreement, or any other contract. And *Syscom* applied New York not Florida law. *Syscom* is irrelevant here, and the agency exception does not apply.

Defendants next argue that the equitable estoppel exception requires that T.T. arbitrate its claims for fraudulent transfer. This argument also fails. Defendants rely on *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999), in support of their position, but *Seifert* involved neither the doctrine of equitable estoppel nor non-signatories.

Defendants' reliance on *Armas v. Prudential Sec., Inc.*, 842 So. 2d 21 (Fla. 3d DCA 2003), to support their equitable estoppel argument is also misplaced. Defendants cite *Armas* for the proposition that "estoppel-based justification applies when there are allegations of concerted action by both a non-signatory and one or more of the signatories to the contract." (Doc. 30 at 13.) But the *Armas* court reached this decision on facts where two of the three defendants *were signatories* to an arbitration agreement and the plaintiff alleged concerted conduct between the defendants. That is not the case here as none of the Defendants are signatories.

Lastly, Defendants argue that "BMP Int'l, BMP USA, and iGas USA[5] could—if deemed non-parties to the JVC—enforce the JVC's arbitration clause under the third-party beneficiary exception. . . ." (Doc. 30 at 14.) They cite *Henderson v. Idowu*, 828 So. 2d 451 (Fla. 4th DCA 2002), in support of this position. In *Henderson*, the court found that a non-signatory to an arbitration agreement could

---

[5] iGas Holdings could not tenably contend that it was third-party beneficiary under the purported JVC because it was not formed until 2021, more than three years after execution of the purported JVC.

enforce it because the agreement expressly provided for arbitration between the company and its employees, and the plaintiff was as an employee. *Id.* By contrast, the arbitration provision in the JVC does not identify a group of persons or entities that could arbitrate beyond the parties. Thus, the Defendants have not shown that as non-parties to the JVC, they can invoke its arbitration provision against T.T.— another non-party.

### 3.   The JVC was never performed as to T.T.'s role as a preferred supplier, and the agreement was revoked as to T.T. as of July 2018.

Because neither T.T. nor the Defendants were parties to the agreement, the JVC was not enforceable against T.T. from the outset. But even if it was, the contract was never performed as to T.T. and was later revoked. Arbitration provisions are not enforceable under the Arbitration Act if "grounds . . . exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

After the JVC was signed in February 2018, T.T. made several shipments of goods to iGas USA between February and August 2018, but none of them contained goods manufactured by Juhua. (Decl., ¶ 13.) In other words, the shipments did not even arguably fall under the ambit of the JVC. Therefore, even with T.T.'s contemplated involvement in the joint venture as a preferred supplier of Juhua's products to Meng, the agreement was never performed and T.T. never received any benefit from the JVC.

Then, in July 2018, Meng informed Mr. Zhang that T.T.'s role as a supplier for his companies was terminated. (*Id.*, ¶¶ 17-19.) Since August 2018, T.T. has had

no business relationship with Meng, the BMP Defendants, iGas USA, or iGas Holdings. (*Id.*, ¶ 20.) Based on Meng's words, actions, and omissions, any expectation of a benefit to T.T. from the existence of the JVC was revoked. (*Id.*) Accordingly, even if an agreement had existed between T.T. and the Defendants, any such agreement was revoked as of July 2018. T.T. never received shares, distributions, profits, or anything else of value from Meng or Juhua from its intended participation in iGas USA. (Decl., ¶¶ 14–15.)

A year later in August 2019, T.T. filed the Original Action against the BMP Defendants and iGas USA. Defendants' claim that T.T. now "is a constituent part of iGas USA" (Doc. 30 at 6) based on the February 2018 agreement offends common sense, considering that T.T. sued against iGas USA in the Original Action and iGas settled T.T's claims against it.

## B.    No arbitrable issue exists between T.T. and the Defendants.

Even if the Defendants could enforce the arbitration provision of the JVC against T.T.—which they cannot—the issues raised in the Complaint are not subject to arbitration. According to the JVC, "Any dispute **arising from the performance of this contract or related to this contract** shall be submitted to Shanghai International Economic and Trade Arbitration Commission for arbitration . . . ." (JVC, ¶ 22.2) (emphasis added).

"'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (*quoting AT & T Techs., Inc. v.*

14

*Commc'n*, 475 U.S. 643, 648 (1986)). When deciding whether the parties have agreed to arbitrate certain matters, courts apply ordinary state law principles that govern the formation of contracts. *Am. Exp. Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997).

To submit a claim to arbitration, the "significant relationship" test requires "some nexus between the dispute and the contract containing the arbitration clause." *Seifert*, 750 So. 2d at 633. This "contractual nexus" component of the significant relationship test was reaffirmed in *Jackson v. Shakespeare Found, Inc.*:

> "[A] claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship. In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public."

108 So. 3d 587, 593 (Fla. 2013).

Here, none of the allegations in T.T.'s Complaint rely on, refer to, or even mention any purported JVC between T.T. and the Defendants. Indeed, T.T. does *not* allege that Defendants' duties or obligations arose from or were governed by any contract. To the contrary, the Complaint alleges that while a suit for damages against the Defendants was pending, the Defendants fraudulently transferred assets to avoid paying a potential money judgment.

Defendants argue that their proposed new affirmative defense, ratification, is based on the JVC. In other words, Defendants suggest that the JVC authorized the BMP Defendants to transfer their HFC allowances to iGas Holdings–a company

which **did not exist** at the time of the JVC. But this is plainly not the case. Although the JVC discusses the allocation of HFCs allowances between *Meng and the joint venture*, the JVC does not, as Defendants allege, contemplate the mid-litigation fraudulent transfer of HFC allowances from the BMP Defendants to iGas Holdings, the basis of T.T.'s Complaint. Nor could it have as, again, iGas Holdings did not exist at the time.

The provision of the JVC states that, after the establishment of iGas USA, iGas USA shall obtain the HFCs allowances for the accumulated sales volume **in the name of iGas USA**. The JVC contemplates that HFC allowances earned by Meng (and by the BMP Defendants as Meng's affiliates) may be used by the joint venture to import goods *only* after the allowances earned by iGas USA are exhausted. (JVC, ¶ 11.1.) The JVC does not contemplate the transfer of HFC allowances earned by the BMP Defendants to a non-party without consideration.

Even if Section 11.1 of the JVC could be broadly construed as "related to" the expected use of HFC allowances by Meng, the BMP Defendants, and iGas USA, the agreement certainly does not demonstrate T.T.'s ratification of fraudulent transfers of HFC allowances to iGas Holdings—an entity which did not even exist until 2021. Defendants cannot transform this dispute into an arbitrable issue simply by claiming, contrary to the plain language of the 2018 JVC, that the agreement authorized the 2021 fraudulent transfers that are the focus of T.T.'s Complaint. *See, e.g.*, *Taylor Group, Inc. v. Industrial Distributors Int'l Co.*, 506 F. Supp. 3d 1256, 1272-73 (S.D. Fla.

Dec. 10, 2020), *aff'd*, 859 F. App'x 439 (11th Cir. 2021) (rejecting defendants' argument that plaintiff was estopped from refusing to arbitrate per arbitration provision in marketing agreement because their *defense* to plaintiff's trademark claim was based on the agreement). Because T.T.'s *claims* do not arise out of, relate to, or rely on the JVC, there is no arbitrable issue and Defendants' motion fails.

## C.   Defendants have waived any purported right to arbitrate by taking actions inconsistent with the right.

Even if Defendants could demonstrate that the parties agreed to arbitrate and that an arbitrable issue exists—which they cannot— the Defendants have waived any purported right to arbitrate by engaging in acts inconsistent with the intention to invoke such a right. "A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Realco Enter. v. Merrill Lynch, Pierce,* 738 F. Supp. 515 (S.D. Ga. 1990) (quoting *Cornell Co. v. Barber Ross Co.*, 360 F.2d 512 (D.C. Cir. 1966)); *see also* 9 U.S.C. § 3.

In determining whether a party has waived its right to arbitrate, a court decides whether "under the totality of the circumstances," the party "has acted inconsistently with the arbitration right." *S H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (citations omitted) (abrogated on other grounds by *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713 (2022)[6]. To determine whether the

---

[6] The unanimous decision in *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708 (2022), fundamentally changed the law of waiver of arbitration. The Court rejected the notion that the federal policy in favor of arbitration justified special rules for waiver of the right to arbitration and held that courts may not "create arbitration specific variants of federal procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'" *Id.* at 1712-13. "If an ordinary procedural rule . . .

right to arbitrate has been waived, a court considers whether a defendant substantially participated in litigation as part of an analysis of whether the defendant, by participating in the case or by any other action or inaction, waived its right to arbitrate. *Amargos,* 2023 WL 1331261, at *4–5. "A key factor in deciding [the issue of waiver] is whether a party has substantially invoked the litigation machinery prior to demanding arbitration." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) (cleaned up).

In several recent cases, courts have found that participating in litigation conflicted with an intent to arbitrate. *See e.g.*, *Warrington v. Rocky Patel Premium Cigars, Inc.,* No. 22-12575, 2023 WL 1818920, *2 (11th Cir. Feb. 8, 2023) (noting that, although the litigation was in the "beginning stages" and "discovery ha[d] yet to commence," the movant evinced clear intent to litigate this matter prior to asserting his right to arbitrate); *Soriano v. Experian Info. Sols., Inc.*, 2:22-CV-197-SPC-KCD, 2022 WL 6734860, at *2–3 (M.D. Fla. Oct. 11, 2022), objections overruled, 2:22-CV-197-SPC-KCD, 2022 WL 17551786 (M.D. Fla. Dec. 9, 2022) (where the case was pending for four months and among other things, the defendant filed an answer, and submitted a case management report requesting a jury trial, the defendant waived its contractual right to compel arbitration); *Gaudreau v. My Pillow, Inc.*, No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *6–*8 (M.D. Fla. July 1, 2022) (where the defendant removed the case to federal court and answered two complaints without

---

would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.*

mentioning its right to arbitrate, the defendant waived its right).

In *Morewitz v. West of Engl. Ship Owners Mut. Prot. Indem. Ass'n*, the Court found that an insurer had waived its right to arbitrate a dispute with an injured third party because, **in an earlier lawsuit**, it had colluded substantially with its insured in the litigation against the third party. 62 F.3d 1356–1366 (11th Cir. 1995). There, after the insured lost, plaintiffs sued the insurer to enforce the judgment. *Id.* at 1360. When the insurer then sought to compel arbitration, the court concluded that it had waived its right by failing to demand arbitration in the earlier litigation. *Id.* at 1366. The court noted that the insurer, *though not even a named party to the earlier suit*, participated in it by defending its interests against the party whom the insurer later attempted to compel to arbitrate, and had therefore waived arbitration. *Id.*

Defendants in this case have similarly engaged in *years* of litigation against T.T.—the very party against which they now seek to arbitrate—concerning indisputably related issues that they now claim to be arbitrable. But even worse, the previous litigation involves the *same defendants*, with Meng at the helm of each, and the *same court*. T.T.'s fraudulent transfer claims indisputably relate to issues litigated in the Original Action, not only because the purpose of the fraudulent transfers was to avoid the BMP Defendants' payment of damages awarded in that Action, but also because some of the fraudulently transferred assets (EPA allowances) were earned by the BMP Defendants by importing goods shipped by T.T they failed to pay for.

19

Further, this case has now been pending for *more than eight months*. In that time, Defendants have filed a motion to extend the for them to file Answers; the Answers themselves; a joint case management report; initial disclosures, and a motion for leave to amend their Answers to add affirmative defenses—all to advance the ongoing litigation.

Defendants' untimely attempt to force arbitration of T.T.'s claims concerning assets acquired through Defendants' wrongful retention of the goods at issue in the Original Action, offends notions of judicial economy. "Acting in a manner inconsistent with one's arbitration rights and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime." *Gutierrez*, 889 F.3d at 1236. Defendants plainly had the opportunity to attempt to invoke the JVC in the Original Action and in response to T.T.'s Complaint but did not. Thus, the Court should deny Defendants' motion because, even if they otherwise had a right to arbitrate, they waived it by litigating.

**D.     Dismissal of the action is not an appropriate remedy under the FAA.**

Defendants also request dismissal of this case in favor of arbitration. The FAA, however, speaks only of a court's authority to *stay* a judicial case upon granting a motion to compel arbitration. *See* 9 U.S.C. § 3; *see also Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992). Therefore, even if the Court were to find that Defendants had a right to arbitration, dismissal would be inappropriate.

**CONCLUSION**

For the reasons set forth above, this Court should deny Defendants' Motion.

20

Dated:  April 28, 2023                Respectfully submitted,

                              /s/ David B. Weinstein
                              David B. Weinstein (FBN 604410)
                              weinsteind@gtlaw.com

                              Christopher R. White (FBN 1022219)
                              whitech@gtlaw.com

                              **GREENBERG TRAURIG, P.A.**
                              101 East Kennedy Blvd., Suite 1900
                              Tampa, Florida 33602

                              (813) 318-5700 - telephone
                              (813) 318-5900 - facsimile

                              *Counsel for T.T. International Co., LTD.*

## CERTIFICATE OF SERVICE

I certify that on April 28, 2023, I electronically filed the foregoing with the Clerk of the United States District Court for the Middle District of Florida, Tampa Division, by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                              /s/ David B. Weinstein
                              Attorney