UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TT INTERNATIONAL CO., LTD.    )
                              )
v.                            )   Case No. 8:22-cv-01876-WFJ-JSS
                              )
BMP INTERNATIONAL, INC. et    )
al.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

The Court should compel arbitration because (1) TT admits it signed the JVC—a contract that binds TT with an arbitration clause, (2) even if the JVC was terminated as to TT, the arbitration clause remains intact and enforceable, and (3) Defendants did not waive their right to arbitrate. Further, whether the claims relate to the arbitration clause (which they do) is a matter for the arbitrator—not the Court—to decide.

**I. TT is a party to the JVC.**

The Court should reject TT's argument it is not bound by the JVC's arbitration clause. TT argues it should not be bound by the arbitration clause because it is listed only as an "affiliate" rather than a "party" and as the arbitration clause only requires the "parties" to arbitrate. Doc. 38 at 8. TT's argument misses the mark and results in a strained interpretation of the arbitration clause. The first sentence of the arbitration clause, which is the sentence directing arbitration, reads: "Any dispute arising from the performance of this contract or related to this contract shall be submitted to [SIETAC]." Doc. 30-1 at 33. The clause contains no limitations on who is required to

1

arbitrate a dispute. To support its argument the arbitration clause only applies to those defined as the "parties," TT ignores the first sentence of the arbitration clause and quotes references to "parties" that unquestionably relate to the parties to the arbitration—not the parties to the JVC.

The Court should conclude TT is bound by the arbitration clause even though it is defined as an "affiliate" rather than a "party." Accepting TT's argument that it is not bound by the arbitration clause because it is only an affiliate and not a party is contrary to the JVC's intent. First, it is important that the JVC is not an American contract. It was executed in China, is in Chinese, contains a Chinese choice of law provision, and requires dispute resolution in China. The JVC was signed by Xianbin Meng, TT, and Zhejiang Juhua Co., Ltd. Doc. 30-1 at 36. Mr. Meng is identified as "Party A" and Juhua is identified as "Party B."[1] *Id.* at 22, at 5. However, there can be no dispute the JVC binds Meng's companies, specifically BMP USA and BMP International. For example, Paragraph 14.1 is meaningless if Meng's affiliates are non-parties: "All employees under the name of BMP, the affiliate of Party A, shall be transferred to the joint venture company under the premise of meeting the requirements of the joint venture company." Similarly, the following language in paragraph 11.1 would be without effect: "The affiliate of Party A shall give priority to purchasing the products of Party B when using the quota." If Meng's affiliates are not

---

[1] Chinese contracts commonly incorporate entities beyond those specifically defined as parties with an "Affiliates" definition. *See* **Exhibit A,** *Exemplar Chinese Contracts Filed with the Securities and Exchange Commission.*

2

parties to the JVC, the JVC is a nullity—and that cannot be what was intended. *See Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1253–54 (S.D. Fla. 2017) ("[W]hen interpreting multiple provisions in contracts, courts will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so.") (internal quotations omitted).

To conclude that "affiliates" are not bound by the JVC's arbitration clause would render the arbitration clause meaningless and result in an absurd result. The Convention on the Enforcement of Foreign Arbitral Awards would be hollow if domestic contract structuring was required to enforce foreign arbitration agreements. In fact, in a recent case interpreting a Chinese contract, a Texas federal district court concluded those defined as *affiliates, but who were not listed as "Parties"* were bound by an arbitration clause. *See Bayco Prod., Inc. v. ProTorch Co., Inc.*, 2020 WL 2574626, at *6 (E.D. Tex. May 21, 2020). The JVC signatories similarly *did not* intend that it bind only the defined "parties." Specifically, while Xianbin Meng is a defined party, it was his businesses, BMP Int'l and BMP USA, the signatories intended to bind.

TT also argues that TT is *explicitly excluded* from certain paragraphs of the JVC. But, that *hurts* TT's argument—if the signatories explicitly excluded TT from specific obligations, they must have intended that TT would be bound by those obligations it was not excluded from. For example, in Paragraphs 7.1 and 7.2, TT was expressly excluded from the obligations of Party A's affiliates. Doc. 30-1 at 16. The Parties clearly intended TT to be bound by the JVC, and importantly, the JVC does not exclude TT from the arbitration clause.

3

Last, and perhaps most importantly, TT has not cited—and Defendants have not located—any case where a signatory to a broad arbitration agreement was not bound by the arbitration agreement. TT requests a truly novel ruling.

TT makes additional arguments that this Court should not reach. For example, TT argues it provided no consideration for the JVC or the arbitration agreement. As detailed above and in Defendants' Motion, TT incurred obligations and obtained rights through the JVC. However, this is irrelevant in determining whether to compel arbitration because the arbitration agreement is a severable and independent contract pursuant to United States Supreme Court authority and SIETAC's Rules. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (reversing Florida Supreme Court) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.") (internal citations omitted); SIETAC Rule 5.5 (an "arbitration clause contained in a contract shall be treated as a clause independent of and separate from all other clauses of the contract"). Because the JVC's arbitration agreement binds TT, the remaining validity of the JVC is an arbitrable issue. *Id.*

TT's argument that the JVC was revoked as to TT similarly fails. Even if the JVC was revoked as to TT, the Supreme Court's precedent and the JVC's plain terms acknowledge the JVC's arbitration agreement survives the contract's termination. *See* JVC ¶ 18.4 ("The following sections shall survive the termination of this contract . . . Section 21 (Resolution of Disputes . . ."). Considering this provision and the Supreme

4

Court's holding in *Buckeye*, even if TT or any other party to the JVC revoked the JVC, disputes related to the JVC still must be arbitrated *unless* the JVC's arbitration provision was specifically revoked. TT offers no evidence that it was.

TT argues that Mr. Zhang did not intend to bind TT to the JVC, but his apparent belief is immaterial. See Pl.'s Resp. Decl., ¶ 12. "[C]ourts look not to the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *Leopold v. Kimball Hill Hones Fla*, 842 So. 2d 133, 136 (Fla. 2d DCA 2003) (internal quotations omitted). Further, Mr. Zhang's statement that TT was a mere "independent supplier" and never received anything else of value from Meng or Juhua from its intended participation in iGas is inconsistent not only with the terms of the JVC but also with the fact that he was appointed *to serve on iGas USA's board of directors* shortly after the JVC was executed.[2] **Exhibit B**, *Supplemental Declaration of Meng.*

## II. Arbitrable issues exist between TT and Defendants.

TT argues that its claims do not arise out of or relate to the JVC. TT *ignores*, however, that the JVC and SIETAC's Rules require arbitration of arbitrability. Pursuant to SIETAC Rule 6.1, the arbitrator "has the discretion to decide on the existence and validity of an arbitration agreement and its jurisdiction over an arbitration case." The United States Supreme Court has further "recognized that

---

[2] Mr. Zhang's declaration describes TT as expecting a key role in iGas USA: "I believed that TT would continue to facilitate the shipment of goods manufactured by Juhua to Mr. Meng in the United States. It is clear form Mr. Zhang's declaration he expected to benefit from the JVC, which he received as he was initially appointed on iGas' Board of Directors.

5

parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Whether TT's claims relate to or arise out of the JVC must be arbitrated.

But, TT should expect to lose that argument. The JVC requires transfer of the very assets TT now complains were improperly transferred. TT's claims, therefore, relate to the JVC. TT attempts to avoid this conclusion by citing the standard for when a dispute arises out of a contract. But, the JVC also requires arbitration of disputes merely relating to the JVC. See JVC ¶ 22.2 ("Any dispute arising from the performance of this contract or related to . . .").

TT then argues it need not arbitrate because it did not mention the JVC in its Complaint: "Here, none of the allegations in TT's Complaint rely on, refer to, or even mention any purported JVC between TT and the Defendants. Indeed, TT does not allege that Defendants' duties or obligations arose from or were governed by any contract." Pl.'s Resp. at 15. TT cites no precedent (because there is none) for the proposition that a plaintiff may avoid an arbitration agreement merely by not mentioning a contract in the complaint. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) ("[P]arties to [arbitration] agreements cannot avoid them by casting their claims in tort, rather than in contract.").

### III. Defendants have not waived their right to arbitrate.

Defendants have not substantially invoked litigation's machinery before demanding arbitration and therefore have not waived their right to arbitrate. *See*

*Dorward v. Macy's Inc.,* 2011 WL 2893118, at *9 (M.D. Fla. July 20, 2011). Defendants have merely answered, participated in a court-ordered scheduling order, and contemporaneously with the motion to compel arbitration, sought to amend their answers.

Courts have found no waiver where movants did much more.[3] For example, this Court found a party retained the right to arbitrate even after the party removed the case to federal court, filed a lengthy motion to dismiss, sought to have the case designated, participated in a case management conference, and filed a case management report—all before moving to compel arbitration. *Grant v. JP Morgan Chase & Co.*, 2019 WL 5215711, at *1 (M.D. Fla. Oct. 16, 2019).

Most persuasively, the Southern District of Florida recently granted a motion to compel arbitration under quite similar circumstances:

> Defendant's participation was not significant enough to support a finding that it acted inconsistently with its contractual right to arbitrate. Unlike the cases cited by Plaintiff, ***Defendant did not remove the case to federal court, has not participated in mediation, exchanged discovery, or sought deposition testimony. This case is in its infancy and limited judicial resources have been employed . . . the Court finds that Defendant has not waived its right to compel arbitration.***

*Amargos v. Verified Nutrition, LLC*, 2023 WL 1331261, at *6 (S.D. Fla. Jan. 31, 2023).

---

[3] Conversely, TT cites cases where waiver was found, but those cases involved movants who had invoked litigation to a far greater extent than Defendants. In *Warrington v. Rocky Patel Premium Cigars, Inc.*, the defendant first sued in state court and amended his complaint. 2023 WL 1818920, *2 (11th Cir. Feb. 8, 2023). Then, when plaintiff filed in federal court, defendant participated in the case management proceedings, moved to dismissed, attempted to remand, and forced the plaintiff to file a motion to compel discovery before invoking his right to arbitrate. *Id.* In *Soriano v. Experian Info. Sols., Inc.*, the parties exchanged written discovery, attended mediation, and submitted a case management report before defendant raised their arbitration claim. 2022 WL 6734860, at *2–3 (M.D. Fla. Oct. 11, 2022). Finally in *Gaudreau v. My Pillow, Inc.*, defendant removed the case and answered two complaints without mentioning their arbitration right. 2022 WL 3098950, at *6–*8 (M.D. Fla. July 1, 2022).

Last, Plaintiff argues that BMP Int'l, BMP USA, and iGas USA waived their rights to arbitrate by not enforcing them in the prior litigation. However, that litigation related to amounts allegedly owed to TT for transfers of refrigerants between 2015 and 2018—that is, for transfers overwhelmingly preceding the JVC's execution.[4] *See Garcia v. Harmony Healthcare, LLC*, 2021 WL 1610093, at *6 (M.D. Fla. Apr. 26, 2021) (finding defendants did not waive their right to arbitrate by not seeking arbitration in prior litigation because the prior litigation dealt with different legal and factual issues). Here, a contractual nexus indisputably exists between the claims and the JVC because there are circumstances in which the resolution of the disputed issue requires either reference to or construction of the JVC. *See Jackson v. Shakespeare Found, Inc.*, 108 So. 3d 587, 593 (Fla. 2013).

## Conclusion

For the reasons addressed above and asserted in Defendants' Motion to Compel Arbitration, this Court should compel arbitration consistent with the JVC's terms.

---

[4] TT's reliance on *Morewitz v. West of England* is also misplaced as *Morewitz* involved an insurance dispute involving an Alabama direct action statute. *See* Doc. 38. The Eleventh Circuit concluded that under Alabama law, the right to seek arbitration was available in the earlier action because of the direction action nature of the statute and "[t]herefore, unless the arbitration provision does not apply to these claimants or West of England has waived its right to compel arbitration . . ." 62 F.3d 1356, 1363-64 (11th Cir. 1995).

Dated: May 12, 2023

Respectfully Submitted,

**HUSCH BLACKWELL LLP**

By: */s/ Buffey E. Klein*
    Buffey E. Klein
    Florida Bar No. 0034639
    1900 N. Pearl, Suite 1800
    Dallas, Texas 75201
    (214) 999-6100
    (214) 999-6170 (fax)
    buffey.klein@huschblackwell.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 12, 2023, the foregoing was filed electronically with the Clerk of the Court for the United States District Court for the Middle District of Florida and was served by operation of that Court's electronic filing system.

*/s/ Buffey E. Klein*
Buffey E. Klein