# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

T.T. INTERNATIONAL CO., LTD.,

    Plaintiff,

v.     Case No. 8:22-cv-1876-WFJ-JSS

BMP INTERNATIONAL, INC.;
BMP USA, INC.; IGAS USA, INC.;
and IGAS HOLDINGS, INC.,

    Defendants.
_____/

## ORDER

Before the Court is BMP International, Inc. ("BMP International"), BMP USA, Inc. ("BMP USA"), iGas USA, Inc. ("iGas USA"), and iGas Holding, Inc.'s ("iGas Holdings") (collectively, "Defendants") Motion to Dismiss and to Compel Arbitration (Dkt. 30). T.T. International Co., Ltd. ("Plaintiff") has responded in opposition (Dkt. 38). Defendants have replied (Dkt. 44). Upon careful consideration, the Court denies Defendants' Motion.

## BACKGROUND

Plaintiff and Defendants are in the refrigerant business. Plaintiff exports refrigerants and related products from China, and Defendants import the same into the United States. At one time, Plaintiff, BMP International, BMP USA, and iGas

USA worked together. Their relationship nevertheless collapsed, resulting in years of litigation in the Middle District of Florida (the "Original Action").[1] Plaintiff now claims, in this related action, that Defendants engaged in a scheme to avoid paying millions in damages awarded to Plaintiff in the Original Action for goods Plaintiff shipped to BMP International and BMP USA (collectively, the "BMP Defendants").

## I.     Factual History

Plaintiff and the BMP Defendants formed a business relationship between August 2012 and June 2015. Dkt. 1 at 6–7. Following this initial period, Plaintiff shipped millions of dollars' worth of refrigerant gases, disposable cylinders, and other related products to the BMP Defendants on an open account basis. *Id.* at 7. By the end of 2015, the BMP Defendants owed Plaintiff approximately $38 million. *Id.* The BMP Defendants' debt continued to grow over the next three years.

In January 2018, Tianli Zhang (Plaintiff's President) met with Xianbin Meng (the individual in control of the BMP Defendants) and a partially state-owned Chinese refrigerant manufacturer called Zhejiang Juhua Co., Ltd. ("Juhua") to discuss the possibility of forming a joint venture. Dkt. 38 at 4. These discussions resulted in the formation of iGas USA and the eventual execution of the Joint Venture Contract (the "JVC"). *Id.* at 4–5.

---

[1] The Court will cite to the Original Action (*T.T. Int'l Co., Ltd. v. BMP Int'l, Inc., et al.*, 8:19-cv-02044) as "OA Dkt. [docket number]."

2

...

The JVC was officially "[e]ntered into by and between" BMP's principal Mr. Meng (identified as "Party A") and Juhua (identified as "Party B") on February 28, 2018. Dkt. 30-1 at 3, 8. Neither Plaintiff nor Mr. Zhang are identified as "Parties" by the JVC. Plaintiff is, however, identified as an "Affiliate." *Id.* at 6. Among other things, the JVC provides that "[t]his contract shall be legally binding upon and shall inure to the benefit of the parties hereto and their respective legal successors and assigns." *Id.* at 34. The JVC also contains an arbitration provision which states that "[a]ny dispute arising from the performance of this contract or related to this contract shall be submitted to Shanghai International Economic and Trade Arbitration Commission [("SIETAC")] . . . for arbitration as a final settlement, and the place of arbitration shall be in Shanghai." *Id.* at 33.

Only months after executing the JVC, Mr. Meng allegedly notified Plaintiff's President Mr. Zhang that he was ending the BMP Defendants' relationship with Plaintiff. Dkt. 1 at 8. The BMP Defendants and iGas USA would procure their refrigerant products directly from Juhua instead of Plaintiff. Plaintiff subsequently demanded that the BMP Defendants pay their outstanding debt in full. *Id.* The BMP Defendants refused to do so. *Id.* at 9. In addition, iGas USA refused to make full payment on shipments made to it by Plaintiff.

In 2019, Plaintiff sued the BMP Defendants and iGas USA to recover their outstanding debt. OA Dkt. 1. Plaintiff alleged that BMP International failed to pay

for over $14 million in goods, that BMP USA failed to pay for over $58 million in goods, and that iGas USA failed to pay for over $1 million in goods. *Id.* at 1. Plaintiff further alleged that all three entities "were controlled, directly or indirectly and in whole or in part, by [Mr. Meng]." *Id.* at 8–9. The Original Action proceeded for three years before culminating in a five-day bench trial here in the Middle District between Plaintiff and the BMP Defendants. Ultimately, judgment was entered in favor of Plaintiff against the BMP Defendants for approximately $89 million in damages. OA Dkt. 224. Post-judgment litigation is still pending in the Original Action.

  Plaintiff now maintains in the instant suit that, throughout the Original Action, Defendants engaged in a fraudulent asset transfer scheme to avoid future judgment. Dkt. 1 at 14. This alleged scheme was threefold. First, in or around June 2020, BMP USA allegedly transferred over $750,000 worth of equipment to iGas USA without adequate consideration. *Id.* Plaintiff claims to have been unaware of this transfer when it settled with iGas USA in the Original Action in October 2020. Second, in June 2021, Mr. Meng created iGas Holdings, at which point iGas Holdings represented to the United States Environmental Protection Agency ("EPA") that the BMP Defendants were its wholly owned subsidiaries. *Id.* at 12. According to Plaintiff, this effectively allowed iGas Holdings to procure highly valuable EPA hydrofluorocarbon ("HFC") allowances that were earned by the BMP Defendants. Plaintiff avers that these EPA HFC allowances were one of, if not the, most valuable

4

asset the BMP Defendants had prior to their effective transfer. *Id.* at 10–13. Plaintiff therefore asserts that the transfer of these valuable allowances is fraudulent as to creditors. Finally, Plaintiff believes that the BMP Defendants transferred their remaining goods to other companies operated by Mr. Meng for little to no consideration—leaving the BMP Defendants with nominal assets. *Id.* at 13–14.

## II.   Procedural History

On August 16, 2022, while the Original Action was still pending, Plaintiff filed the instant case against Defendants. *Id.* at 1. Plaintiff's Complaint asserts three counts: fraudulent transfer of assets by BMP International and iGas Holdings (Count I); fraudulent transfer of assets by BMP USA and iGas Holdings (Count II); and fraudulent transfer of assets by BMP USA and iGas USA (Count III). *Id.* at 15–23. Plaintiff requests "(1) judgment against BMP USA and iGas USA for monetary damages; (2) an attachment on the equipment transferred from BMP USA to iGas USA; (3) an injunction against further disposition of the equipment without Court permission; and (4) such additional relief as is necessary[.]" *Id.* at 23.

On October 10, 2022, Defendants answered. Dkts. 15, 16, 17, & 18. Defendants collectively maintain that any transfers were arm's length transactions for fair value. They deny any liability stemming from Plaintiff's allegations.

Defendants now—for the first time in the parties' extensive litigation history here in the Middle District—move to enforce the arbitration provision contained

within the JVC. Dkt. 30. Defendants maintain that Plaintiff agreed to arbitrate this dispute in Shanghai, China under the arbitration rules of SIETAC. *Id.* at 1. Plaintiff disagrees. Dkt. 38.

## LEGAL STANDARD

In the context of foreign arbitration agreements, two chapters of Title 9 of the United States Code are relevant: "(1) Chapter 1, which contains the [Federal Arbitration Act ("FAA")], 9 U.S.C. §§ 1–16; and (2) Chapter 2, which contains the Convention Act, 9 U.S.C. §§ 201–208." *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1283 (11th Cir. 2015).[2]

The FAA addresses arbitration agreements generally and holds that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects the strong federal policy toward resolving disputed arbitrable issues through arbitration; indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

---

[2] As the Eleventh Circuit has explained, "courts often refer to the entirety of Title 9 as the Federal Arbitration Act[.]" *Escobar*, 805 F.3d at 1283 n.3. Like the Eleventh Circuit, however, the Court will "differentiate[] between Chapter 1 and Chapter 2 because the terms of the two chapters call for such differentiation." *Id.* (citation omitted).

6

U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration"). That said, courts "are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (citation and internal quotations omitted). And "parties will not be required to arbitrate when they have not agreed to do so." *Id.*

The Convention Act, on the other hand, specifically addresses foreign arbitration agreements through its implementation of the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). 9 U.S.C. § 201.  The Convention provides that the United States "shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." New York Convention, art. II, June 10, 1958, 21 U.S.T. 2517. "[U]nder the Convention and Supreme Court precedent, there is a strong presumption in favor of freely-negotiated contractual choice-of-law and forum-selection provisions, and this presumption applies with special force in the

field of international commerce." *Lindo v. NCL (Bah.), Ltd.*, 652 F.3d 1257, 1275 (11th Cir. 2011).

"In determining whether to compel arbitration under the Convention Act, a district court conducts 'a very limited inquiry.'" *Escobar*, 805 F.3d at 1285. First, a court conducts a four-part test that asks whether: (1) the agreement is written within the meaning of the New York Convention; (2) the agreement provides for arbitration in the territory of a signatory nation; (3) the agreement arises out of a legal relationship which is considered commercial; and (4) one of the parties to the agreement is a non-American citizen. *Id.* Second, a court considers whether any of the Convention's affirmative defenses applies. *Id.* at 1285–86. If the jurisdictional prerequisites exist and no affirmative defense applies, a court must order arbitration. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294–95 (11th Cir. 2005).

## DISCUSSION

The Court begins its analysis by considering the Convention's jurisdictional prerequisites. To begin, the JVC is a written agreement (within the meaning of the Convention) that provides for arbitration in China (a signatory nation). Dkt. 30-1 at 33. The JVC also arises out of a legal relationship that is plainly commercial in nature and involves at least one Chinese corporate party (Juhua). *Id.* at 3, 5. It therefore appears that the Convention's jurisdictional prerequisites are satisfied.

Notwithstanding, there is a fundamental gateway matter at issue in this case. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (finding that courts may sometimes assume that parties intend courts to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all"). The Convention provides that the United States "shall recognize an agreement in writing under which *the parties undertake to submit to arbitration*[.]" New York Convention, art. II (emphasis added). This effectively means that, for the Convention to apply, Plaintiff must be a party to the JVC such that Plaintiff agreed to be bound by the arbitration provision contained therein. *Princess Cruise Lines, Ltd.*, 657 F.3d at 1214 (finding that "parties will not be required to arbitrate when they have not agreed to do so").

The language of the JVC leaves little doubt that Plaintiff is not a party to the JVC in any sense that would subject it to the JVC's arbitration provision. Plaintiff is not a named party in the JVC. Plaintiff does not fit the definition of "Affiliate" provided by the JVC. Dkt. 30-1 at 5–6. The signature page of the JVC (signed by Mr. Zhang, Mr. Meng, and Juhua), moreover, provides that "this is to certify that duly authorized representatives of *both parties* have signed this contract on the date set forth on the first page"—the only parties listed on the first page are Mr. Meng and Juhua. *Id.* at 3, 36 (emphasis added). And despite explicitly mentioning "affiliates" in multiple provisions, the terms "affiliate" or "affiliates" is wholly

9

omitted from the JVC's arbitration provision and other key sections concerning the parties' rights and obligations. *Id.* at 33. It is evident, under any American contract construction principles, that the JVC is a contract between Mr. Meng and Juhua which Mr. Zhang signed as a third-party beneficiary.

Even so, because the JVC provides that Chinese laws and regulations will govern the interpretation of the JVC, the Court will not conduct more extensive analysis of this issue or rest its opinion on it. Nor will the Court rest its opinion the fact that iGas Holdings (and most likely iGas USA) is not a party to the JVC, as the import of this fact is surely dependent on matters of contract interpretation.

Instead, the Court denies Defendants' Motion to Dismiss and to Compel Arbitration on the basis of waiver. The Eleventh Circuit has made clear that the affirmative defense of waiver is available at the arbitration-enforcement stage in cases involving motions to compel arbitration under the Convention. *Escobar*, 805 F.3d at 1286 ("Under Article II, the only affirmative defense to arbitration is a defense that demonstrates the arbitration agreement is null and void . . . . The null-and-void clause encompasses only those defenses grounded in standard breach-of-contract defenses—such as fraud, mistake, duress, and waiver—that can be applied neutrally before international tribunals."). "The Court conducts a two-part inquiry to determine whether a party has waived its arbitration rights." *Gutierrez v. Wells*

*Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018).[3] The first part focuses on "the totality of the circumstances" and asks whether the nonmoving party has "substantially invoked the litigation machinery prior to demanding arbitration." *Id.* (citations and internal quotations omitted). The second part focuses on the prejudice to the nonmoving party and considers, among other things, the expense incurred by the moving party's participation in the litigation process. *Id.* (citations and internal quotations omitted).

This waiver inquiry demonstrates that Defendants have waived any right to arbitration that they might have had under the JVC. The BMP Defendants participated in three years of litigation before losing at a lengthy bench trial in this courthouse and having an $89 million judgment entered against them in favor of Plaintiff. OA Dkt. 224. iGas USA participated in a year of the same litigation before settling with Plaintiff. OA Dkt. 75. iGas Holdings is not a party to the JVC and was not created until years after the JVC's execution. Now, for the first time, Defendants seek to compel arbitration in what is essentially a collections lawsuit alleging fraudulent conveyances to defeat the Middle District's judgments. Given this

---

[3] The Eleventh Circuit has held that "because federal law favors arbitration, any party arguing waiver of arbitration bears a heavy burden of proof." *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (internal quotations omitted). The Supreme Court has nevertheless recently explained that courts may not "create arbitration-specific variants of federal procedural rules, like those concerning waiver, based on the FAA's policy favoring arbitration." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712–14 (2022). It is unclear whether this holding has any impact on Plaintiff's burden of proof here. Either way, Plaintiff has carried the heavy burden of proof called for by Eleventh Circuit precedent.

timeline of events, there simply can be no question that the BMP Defendants and iGas USA (the only parties with any cognizable claim to arbitration rights under the JVC) substantially invoked the litigation machinery prior to demanding arbitration.[4] *See Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1366 (11th Cir. 1995) (finding that an insurer waived its right to arbitrate its case with an injured third party after the insurer substantially participated with its insured in a prior litigation). The prejudice to Plaintiff is also abundantly clear. Plaintiff spent millions of dollars pursuing its claims here in the Original Action. Plaintiff was also taxed in time—time Defendants allegedly spent hiding assets to avoid judgment. And this is not to mention that this case had been pending for eight months prior to Defendants filing the instant Motion. Defendants' arbitration rights, if any ever existed, are gone.

Finally, it is worth noting that the waiver doctrine was designed to prevent exactly what Defendants now seek to achieve. As the Eleventh Circuit has explained:

> Careful examination of our precedent reveals that the purpose of the waiver doctrine is to prevent litigants from abusing the judicial process. Acting in a manner inconsistent with one's arbitration rights

---

[4] Defendants argue that they did not waive their right to arbitrate by failing to seek arbitration in the Original Action because the Original Action focused on transfers that preceded the JVC's execution. Dkt. 44 at 8. This argument is unavailing. The JVC was executed on February 28, 2018. Dkt. 30-1 at 3. Evidence from the Original Action demonstrates millions of dollars' worth of transfers from Plaintiff to one or more of the Defendants after February 28, 2018. OA Dkt. 197-141 at 7–8. It follows that Defendants could have invoked their alleged right to arbitration in the Original Action if Plaintiff is indeed bound by the JVC (as Defendants argue here); for, the JVC provides that "[a]ny dispute arising from the performance of this contract or related to this contract shall be submitted to [SIETAC]." Dkt. 30-1 at 33.

12

>and then changing course mid-journey smacks of outcome-oriented gamesmanship played on the court and the opposing party's dime. The judicial system was not designed to accommodate a defendant who elects to forego arbitration when it believes that the outcome in litigation will be favorable to it, proceeds with extensive discovery and court proceedings, and then suddenly changes course and pursues arbitration when its prospects of victory in litigation dim. Allowing such conduct would ignore the very purpose of alternative dispute resolution: saving the parties' time and money.

*Gutierrez*, 889 F.3d at 1237. Indeed, it is telling that Defendants did not invoke the JVC's arbitration clause in the instant action until judgment had been entered against the BMP Defendants in the Original Action, especially when Plaintiff filed the instant action over six months prior to said judgment. Defendants' outcome-oriented strategy may be understandable given the size of the judgment. But waiver it clearly is. The Court refuses to reward this strategy by forcing Plaintiff to arbitrate claims related to the claims Plaintiff spent over three years litigating against the BMP Defendants in the Original Action. All the benefits of arbitration (lower costs, quicker results, etc.) were foregone by the three-year federal court battle that movants fought and lost.

## CONCLUSION

Defendants have waived any right to arbitrate under the JVC. The Court will not dismiss or stay this case.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendants' Motion to Dismiss and to Compel Arbitration (Dkt. 30) is

**DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on May 15, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record